## YOUNG v BRUNDIGE

Ohio Appeals, 2nd Dist, Franklin Co

No 2184.   Decided Feb 21, 1933

**BY THE COURT**

John W. Wilson, Columbus, for plaintiff in error.

A. J. Worsham, Columbus, and R. E. Hughes, Columbus, for defendant in error.

The petition in error assigns numerous grounds and the brief in support thereof is voluminous, as are the answer brief and the reply brief.   Twelve separate grounds of error are presented, urged and discussed at length.   We do not deem it necessary to consider these headings categorically but to pass on them in a general discussion of the questions raised.

This case is typical in that it presents a sharp conflict upon the basic issue, namely, whether or not there was a contract for a year between Paul Brundige and the defendant.   Determination of this disputed question depends entirely upon the credibility of the witnesses who testified to the facts pertinent to the question.   We have no doubt that, giving to the evidence of

plaintiff's witnesses that weight which the jury could very properly accord it, the plaintiff established the existence of a contract by the terms of which the plaintiff agreed to furnish and deliver to the defendant and the defendant agreed to accept milk from the plaintiff for a year from January 1, 1930, on the base of delivery of 250 pounds per day of 4% butter fat content. The petition further avers that this milk was to be paid for at the rate of $3.15 per hundred pounds. The probabilities are strongly against proof of this term of the contract but the jury may properly have said that there was a contract to pay for the milk delivered by Paul Brundige the price fixed by the producer's association in conjunction with the dealers committee. This price varied somewhat from and was considerably less than $3.15 per hundred pounds. The testimony supporting plaintiff's claim on the matter of the amount to be paid for the milk is not definite to support the contention that Paul Brundige was to be paid at the rate of $3.15 per hundred pounds. We are, therefore, at the outset presented with the question whether or not the variance between the allegation of the petition and the proof respecting the contract price is so material as to be fatal. We are of opinion that the variance is not such as would require us to say that the proof fails on a material averment of the petition. **9 O. Jur. 651.** The jury, under the evidence, could not have found that there was a contract to pay Paul Brundige as much as was claimed in the petition and therefore its verdict could not have been based upon any such finding. It is apparent that the verdict which the jury reached must have been founded upon a contract wherein defendant was to pay Paul Brundige the price which he was paying other producers, by the terms of the written contracts generally in use. These contracts were made on the base plan with certain increase in payment for an excess of butter fat content above the stipulated amount, certain reductions for a decrease below the standard in butter fat content, or for lesser poundage than the base amount, and payment of a lesser sum per pound known as the manufacturer's price, for deliveries in excess of the base amount. The record supports the verdict of the jury against any claim that it was manifestly against the weight of the evidence on the question of the contract and the terms thereof.

There is also support in the record for the claim that Paul Brundige assigned his contract rights to his brother Edward W. Brundige with the knowledge of the defendant. This is specifically testified by the plaintiff, who says further that at the time that this notification was given to the defendant he said that he would have to look at the original contract, which was further support of the claim that there was a definite contract between the parties. The custom of the dealers to make their contracts with large producers, such as plaintiff, for the full period of one year for the year beginning January 1, 1930, in conjunction with the fact that the plaintiff delivered and defendant accepted milk for a period of five months, from January to May, inclusive, in 1930, lends some support to the theory that there was a contract for the full year of 1930.

But it is urged that it does not appear in the record that the plaintiff used due diligence to dispose of his milk to the best advantage and thereby minimize his damage. The record is conclusive that at the time of the termination of the arrangement between plaintiff and defendant respecting the delivery of the milk, there was a marked surplus of milk in the market, which condition obtained for the remainder of the year 1930. It is permissible inference that it would have been a vain thing for plaintiff to have attempted to sell his milk to any other dealer under these circumstances. There was left to him, then, such other alternatives as seemed practical. He attempted to sell direct, which attempt was unsuccessful because of his inability to comply with certain provisions of the Columbus health code respecting preparation of milk for delivery. He was then put to the necessity of selling his milk to what is known as the "Powder Plant," The M. & R. Dietetic Laboratory at manufacturers' prices. The prices which he received were standard for this type of sale and far below the sum which defendant had agreed to pay to him under his contract as established. Thereafter, according to the record, the market value at the Powder Plant was so low, it was not feasible to longer deliver there. In this situation paintiff separated his milk, selling the cream to the Fairmont Creamery and feeding the skimmed milk to his hogs. The period over which this was done appears and the amount received for the cream also is testified. This procedure netted him no more than he was receiving at the Powder Plant, and the jury, therefore, had basis for determining the difference between that which plaintiff would have received had the contract been performed by the defendant, and that which

he was able to receive by other disposition of the milk. This difference was material and could have reached the sum of $500.00, the amount of the verdict, within the period covered by the express testimony on the subject.

The record is voluminous and much of the questioning went far afield. The testimony respecting custom, which seemed to be the basis of much evidence which was not germane to the narrow question presented, was offered in the first instance by the defendant. Its relevancy under the facts is somewhat doubtful as much of the testimony did not reach to the dignity of establishing a custom, because of exceptions to the custom which appeared in the statements of the witnesses. However, we are unable to determine that this line of testimony was abused by the plaintiff, nor that anything developed therefrom which of itself can be said to be prejudicial to the cause of the defendant. As much may also be said for the conduct of counsel for plaintiff during the trial of the case, to which serious objection is made. In one instance in particular, plaintiff's counsel was too insistent in restating the same question to elicit the result of plaintiff's inability to sell his milk to defendant under the contract after the court had ruled that such testimony was not proper. The answer of the witness, which was stricken from the record was also alluded to in the argument of counsel for plaintiff to the jury but in the statement made to the jury there was no objection nor exception and the court was not called upon to take the statement from the jury and admonish it not to consider it. While this line of questioning and this statement to the jury should not have occurred, we can not say that it resulted in prejudice to the defendant. The facts which the questions would have elucidated were only such logical inferences as the jury may well have otherwise drawn from the testimony. That is to say, it was altogether probable that this plaintiff operating a dairy farm with some forty cattle would be put out of business if he lost all the profit on his milk for a period of seven months, but this was not the question before the jury, and the court and counsel very definitely so informed the jury. The issue was whether or not there was a contract for the year, substantially according to the terms set out in the petition. If so, the plaintiff suffered damage and was entitled to be compensated. If not, then the effect of the defendant refusing to accept his milk was of no concern to the jury.

We find nothing which requires a finding of passion or prejudice in the consideration of this case. We have considered all of the questions urged and find no error resulting in prejudice to the defendant and requiring us to set aside this judgment. The claim that newly discovered evidence is available to the defendant, which should require a new trial is not, in our judgment, well taken. The fact upon which this claim is based was available to defendant by an examination of records and there is no showing of any diligence whatever to determine before trial the matter which is now set forth. It is the obligation of a party to a law suit, if he expects to impeach his opponent, to make reasonable effort before trial to inform himself of any matter which might be available for such purpose.

The outstanding question in this law suit was one of fact, which the jury resolved in favor of the plaintiff. In so doing it was acting well within its rights. It could have given credence to defendant's witnesses, have returned its verdict for him and, upon the test which we must apply to the record, we would have been compelled to support it.

We find no error requiring a reversal of this cause. It will, therefore, be affirmed.

HORNBECK, PJ, KUNKLE and BARNES, JJ, concur.